# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

UNITED STATES OF AMERICA,

v.

**CRIMINAL COMPLAINT**

EFREN OLVERA-ORTIZ,

CASE NUMBER:    1:05-MJ-621

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of

my knowledge and belief. On or about _____March 26, 2005_____ in __Van Buren__ county, in

the Western District of Michigan, Southern Division defendant(s)  (Track Statutory Language Offense)

> Was present in the United States after having been previously removed and knowingly and willfully transported 13 illegal aliens within the United States in furtherance of their illegal presence

in violation of Title __8__ United States Code, Section(s) __1326(a); 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(ii)__

I further state that I am a(n) _____Special Agent, ICE_____ and that this complaint is based on the following

                                                                Official Title

facts:


See attached affidavit



Continued on the attached sheet and made a part hereof:  _X_ Yes   ___ No


_____
Signature of Complainant      DANIEL E. GWYN


Sworn to before me and subscribed in my presence,

__April 1, 2005__  2:35 pm_____    at    __Grand Rapids, Michigan_____
Date and Time Issued

Honorable ELLEN C. CARMODY      _____
Magistrate Judge                Signature of Judicial Officer
*Name & Title of Judicial Officer*

## AFFIDAVIT

1.  I, Daniel E. Gwyn, am a Special Agent with the Department of Homeland Security, U.S. Immigration and Customs Enforcement (U.S. ICE), and I am assigned to the Grand Rapids, Michigan office. I have been an officer with the federal government for ten years. The following information is submitted in support of a finding of probable cause and is therefore a summary of facts known to me.

2.  On April 4, 2003, Efren OLVERA-Ortiz, a citizen of Mexico born January 11, 1982 and assigned alien file A95 286 107, was removed from the United States to Mexico at Naco, Arizona for being unlawfully present in the United States without admission or parole.

3.  On January 21, 2004, Efren OLVERA-Ortiz was again removed from the United States to Mexico at Laredo, Texas for being unlawfully present in the United States without admission or parole.

4.  On June 10, 2004, Efren OLVERA-Ortiz was again removed from the United States to Mexico at Nogales, Arizona for being unlawfully present in the United States without admission or parole.

5.  On March 26, 2005 at 2:15 p.m., Trooper Jose Patino of the Michigan State Police Paw Paw Post performed a vehicle stop on a 1997 Chevrolet Suburban on Interstate 94 near mile marker 46 in Hartford, Michigan. The vehicle stop was performed because the Arizona temporary license plate on the vehicle was obstructed. Trooper Patino requested identification from OLVERA-Ortiz and he produced a Mexican driver's license bearing the name Hector MARTINEZ-Olvera with a date of birth of October 11, 1982. A subsequent FBI fingerprint check revealed the driver, who had identified himself as Hector MARTINEZ-Olvera, was actually Efren OLVERA-Ortiz. OLVERA-Ortiz stated to Trooper Patino that he was driving from Phoenix, Arizona to New York. Trooper Patino subsequently discovered thirteen additional male subjects in the vehicle.

6.  On March 26, 2005 at approximately 2:45 p.m., this affiant was contacted by Sergeant Martin of the Michigan State Police Paw Paw Post who requested U.S. I.C.E. assistance at the scene of the traffic stop. This affiant responded to the scene and encountered OLVERA-Ortiz and the thirteen male passengers. This affiant read OLVERA-Ortiz his Miranda warnings in Spanish and he agreed to answer questions without a lawyer present. OLVERA-Ortiz stated they had departed Phoenix, Arizona and were on their way to New York. This affiant then asked OLVERA-Ortiz where in New York they were going and he stated that he did not know, but was going to call a friend of his when he got there. This affiant then questioned OLVERA-Ortiz and the

thirteen other males regarding their immigration status.  All the subjects admitted to be citizens of Mexico illegally in the United States.

7.  While this affiant was interviewing the illegal aliens, Trooper Patino observed the subject who had been sitting next to OLVERA-Ortiz remove an envelope from the sleeve of a black jacket located in the front seat of the vehicle and put it in his pocket.  Located in the envelope was approximately $1,300.00 in United States currency.  Trooper Patino then asked whose money it was and the front seat passenger stated that it belonged to himself, OLVERA-Ortiz, and one other person that was there.  Trooper Patino subsequently returned the money to the passenger who had been sitting in the passenger seat next to OLVERA-Ortiz.  Later while having the aliens remove their property from the vehicle, this affiant and Trooper Patino observed OLVERA-Ortiz put on the black jacket where the envelope of money had been located in the sleeve.

8.  While awaiting a transport van, several of the aliens including OLVERA-Ortiz fled the scene on foot, but were soon apprehended within the hour.  At the time OLVERA-Ortiz was taken back into custody, Trooper Patino discovered the envelope of money that he had been given back to the front seat passenger in a front pants pocket of OLVERA-Ortiz.  Trooper Patino then removed the envelope of money from his front pants pocket and OLVERA-Ortiz asked where it was going.  Trooper Patino then told OLVERA-Ortiz that the money would be turned over to the agent with U.S. Immigration and Customs.  OLVERA-Ortiz stated that it was all his money and he did not want it given to the agent with U.S. Immigration and Customs Enforcement.  In this affiant's experience, aliens pay smugglers cash to transport them from the border to locations away from the border.

9.  This affiant then transported OLVERA-Ortiz from the scene to the Calhoun County Correctional Facility in Battle Creek, Michigan.  At the Calhoun County Correctional Facility, OLVERA-Ortiz's index fingerprints were checked in the IDENT computerized records system and they returned as match to Efren OLVERA-Ortiz, alien file A95 286 107, who had been previously removed on three separate occasions from the United States to Mexico.

10.  On March 29, 2005, this affiant and Special Agent Mark Pulaski of U.S. Immigration and Customs interviewed ten of the aliens who had been present in the Chevrolet Suburban when it was stopped on March 26, 2005.  According to the aliens, all had made arrangements in Mexico to be smuggled into the United States and then be taken to various locations within the United States.  Several of the aliens stated they had paid money to the smugglers in Mexico before they departed for the United States, while others claimed they were to pay after they arrived at their destinations in the United States.  Amado CRISTOBAL-Morales, Juan VELASQUEZ-Martinez, Javier YLLESCAS-Maldonado, Cesar RODRIGUEZ-Santos, Fermin MORALES-Bautista, Epifanio MALDONADO-Manzano, and Adelaido CONTRERAS-Lopez stated that they

crossed the United States/Mexico border together by walking with a smuggling guide for three days and nights in the area of Nogales, Arizona.  These seven aliens then stated they were taken by this guide to a highway where they were picked up by an unknown male smuggler in a truck and driven to a house in Mesa, Arizona.  These seven aliens further stated they were dropped off at the house and waited inside.  After waiting approximately one day, they heard a vehicle arrive at the house, and were told by another unknown smuggler to go out and get in the vehicle.  These seven aliens further stated OLVERA-Ortiz was driving this vehicle that he drove them approximately two blocks away to another house where Ruben SANCHEZ-Lorenzo, Rogelio LORENZO-Huerta, Anibal TRIGUENOS-Mendez, Avenamar MALDONADO-Perez, Genaro MALDONADO-Lopez, and Francisco MARTINEZ-Maldonado entered the vehicle.  According to all the aliens, they departed on the evening of Thursday March 24, 2005 and that each person paid OLVERA-Ortiz approximately $100.00 for food and gasoline for the trip.  Epifanio MALDONADO-Manzano stated OLVERA-Ortiz had told them at the beginning of the trip to keep down in the vehicle.  In addition, Rogelio LORENZO-Huerta stated OLVERA-Ortiz drove the entire way to Michigan except for a three hour period in Colorado when he drove, so OLVERA-Ortiz could sleep.

11.    It is a felony under Title 8 United States Code Section 1326(a) for a person who has been removed from the United States to return to the United States without the express prior permission of the Attorney General.  No evidence has been found that Efren OLVERA-Ortiz has applied for or been granted such permission.

12.    It is also a felony under Title 8 United States Code Sections 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(ii) for a person to knowingly or in reckless disregard of the fact that aliens had entered and remained in the United States in violation of law, to willfully transport such aliens within the United States, in furtherance of such violation of the law.

13.    I know the foregoing from firsthand knowledge or personal investigation, and information provided to me from other law enforcement sources.

_____
Daniel E. Gwyn, Special Agent
U.S. Immigration and
Customs Enforcement

Sworn to before me and subscribed in
my presence this 1st day of April, 2005.

_____
Honorable ELLEN S. CARMODY
United States Magistrate Judge